**IN THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

CITY OF WEST PALM BEACH,
FLORIDA,

      Plaintiff,

      v.

AGC CHEMICALS AMERICAS INC.;
ANGUS FIRE ARMOUR
CORPORATION;
ARCHROMA U.S., INC.;
ARKEMA INC.;
BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT CO.;
CARRIER GLOBAL CORPORATION;
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CHEMICALS INC.;
CHUBB FIRE, LTD.;
CIBA, INC. (F/K/A CIBA SPECIALTY
CHEMICALS CORPORATION);
CLARIANT CORP.;
DEEPWATER CHEMICALS, INC.;
DYNAX CORP.;
KIDDE FIRE FIGHTING, INC.;
KIDDE PLC INC.;
NATIONAL FOAM, INC. (A/K/A
CHUBB NATIONAL FOAM);
NATION FORD CHEMICAL
COMPANY;
RAYTHEON TECHNOLOGIES
CORPORATION;
THE ANSUL COMPANY;
TYCO FIRE PRODUCTS LP;
UTC FIRE & SECURITY AMERICAS
CORPORATION, INC.;
WILLIAMS FIRE & HAZARD
CONTROL, INC;
JOHN DOE DEFENDANTS 1-50,

      Defendants.

MDL No. 2:18-mn-2873-RMG

This Document Relates To:

**Case No.**  2:23-cv-04694-RMG

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, City of West Palm Beach, Florida, files this Complaint against the Defendants named herein and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1.      Plaintiff brings this action for damages, contribution and reimbursement of costs incurred, and which continue to be incurred, to address the presence of Per- and polyfluoroalkyl substances or "PFAS" chemicals—including but not limited to Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoroheptanoic acid ("PFHpA"), Perfluorohexanesulfonic acid ("PFHxS"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), as well as any and all hazardous chemicals produced by Defendants (collectively referred to herein as "PFAS"), — found in the City of West Palm Beach, Florida, public water supply system and in the groundwater that serves as supply sources for that system.  As the manufacturers and sellers of products that contain PFAS compounds, Defendants have discharged PFAS into, or are otherwise responsible for PFAS released into, the waters that serve as the supply sources for Plaintiff's public water supply systems.

2.      For years, Defendants manufactured, sold, and distributed PFAS compounds and products containing PFAS chemicals.  These products include the firefighting suppressant agent, Aqueous Film Forming Foam ("AFFF") that contains those compounds, for use at airports, military facilities, and other locations throughout the State of Florida.

3.      Defendants knew, or should have known, that PFAS and related constituents in Defendants' products and by-products present unreasonable risks to human health, water quality, and the environment and of the dangers associated with these compounds. Yet, Defendants handled, discharged, and were otherwise responsible for the release of PFAS into the environment

without sufficient containment, caution, warning, testing, or use of alternative feasible products or components.

4.      Defendants designed, manufactured, marketed, distributed, and/or sold AFFF Products knowing that the PFAS in these Products would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendants. Despite their knowledge, Defendants kept this information hidden from the public, including the Plaintiff.

5.      Defendants' acts and omissions resulted in PFAS seeping into the groundwater and surface water and into a flow zone adjacent to the Plaintiff's raw water sources. As a result of the occurrence of PFAS in the environment from Defendants' products, Plaintiff has been and will be required to fund and implement capital costs, and has and will in the future incur ongoing operation and maintenance costs.

6.      With regard to the Defendants' tortious and wrongful conduct herein alleged, the Defendants used the U.S. mail, interstate wires, federal and state judicial systems, regulatory filings and testimony, and other vehicles to promote, conceal, protect, and continue their tortious and wrongful conduct over many, many years.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount-in-controversy exceeds $75,000.

8.      Plaintiff brings this civil action directly in In Re: Aqueous Film-Forming Foams Products Liability Litigation, Multi-District Litigation ("MDL") No. 2873. Plaintiff files directly in this venue, the United States District Court for the District of South Carolina, Charleston

Division, as allowed under the provisions of Paragraphs 25-29 of this Court's Case Management Order No. 3, dated April 26, 2019 (Doc. # 72).  Plaintiff designates the United States District Court for the Southern District of Florida as its "Home Venue" under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in that District.  But for this Court's Order permitting direct filing in this MDL, Plaintiff would have filed in its Home Venue.

9.      Plaintiff is a municipal government entity located in West Palm Beach, Florida, with its principal place of business located at 401 Clematis Street, West Palm Beach, Florida 33401.

10.     Plaintiff owns and operates a water treatment and distribution utility that serves customers in and near the West Palm Beach, Florida, region.  Plaintiff has been committed to providing a reliable and safe resource of water for more than 120,000 customers since acquiring its water treatment facility in 1955.

11.     Plaintiff relies on surface water from the Grassy Waters Preserve, a twenty-three-square-mile wetland ecosystem that feeds and sustains Lake Mangonia and Clear Lake.

12.     Plaintiff's water treatment facility is designed to provide up to 50 million gallons of safe drinking water each day.

13.     This action is brought by the Plaintiff to recover damages and seek other redress for harm caused by Defendants' negligence, gross negligence, trespass, nuisance, and fraudulent transfer relating to PFAS. Defendants' actions have caused and continue to cause damages to Plaintiff.

**<u>DEFENDANTS</u>**

14.     The term "Defendants" refers to all Defendants named herein jointly and severally and includes presently unidentified Defendants, herein named as John Does 1-50, whose activities

5

also contaminated and polluted the Plaintiff's raw water sources in same or similar ways as alleged herein, but also other ways such as carrying on their business operations.

15.     Defendant Kidde PLC Inc. ("Kidde") is a Delaware corporation authorized to do business in New York, with principal offices at One Carrier Place, Farmington, CT 06034. Upon information and belief, Kidde was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

16.     Defendant Kidde Fire Fighting, Inc. ("Kidde Fire Fighting") is a Pennsylvania corporation with principal offices at 400 Main Street, Ashland, MA 01721. Upon information and belief, Kidde Fire Fighting, was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

17.     Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation, with principal offices at 13995 Pasteur Boulevard, Palm Beach Gardens, FL 33418. Upon information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business. Upon information and belief, Carrier is the parent corporation of Kidde.

18.     Defendant National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, with its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

19.     At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained PFAS compounds for sale and use throughout the United States.

20.     Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with principal offices at 141 Junny Road, Angier, NC 27501.

6

21.     Defendant The Ansul Company ("Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

22.     At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained PFAS compounds.

23.     Defendant Tyco Fire Products L.P. ("Tyco") is a Delaware limited partnership with principal offices at 1400 Pennbrook Parkway, Lansdale, PA 19446.  Upon information and belief, Tyco is the successor-in-interest to Ansul, Inc. ("Ansul").

24.     Defendant Chemguard, Inc. is a Wisconsin corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

25.     At all times relevant, Chemguard, Inc. manufactured fire suppression products, including AFFF that contained PFAS compounds.

26.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ.  Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

27.     Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation with principal offices at 13995 Pasteur Blvd., Palm Beach Gardens, FL 33418.  Upon information and belief, UTC was a division of United Technologies Corporation.

28.     Defendant Raytheon Technologies Corporation ("Raytheon") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington,

DE 19801. Upon information and belief, Raytheon is successor-in-interest to United Technologies Corporation.

29.    Defendant Buckeye Fire Equipment Company ("Buckeye") is a North Carolina corporation, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.

30.    At all times relevant, Buckeye manufactured fire suppression products, including AFFF that contained PFAS compounds.

31.    Defendant Ciba, Inc. (f/k/a Ciba Specialty Chemicals Corporation) ("Ciba") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

32.    Defendant BASF Corporation ("BASF") is a Delaware Corporation, with principal offices at 100 Park Avenue, Florham Park, NJ 07932.  Upon information and belief, BASF is the successor-in-interest to Ciba.  Defendant BASF Corporation ("BASF") is a Delaware Corporation, with principal offices at 100 Park Avenue, Florham Park, NJ 07932.  Upon information and belief, BASF is the successor-in-interest to Ciba.

33.    Defendant Dynax Corp. ("Dynax") is a Delaware corporation, with principal offices at 103 Fairview Park Drive, Elmsford, NY 10523.

34.    Defendant Clariant Corp. ("Clariant") is a New York corporation, with principal offices at 4000 Monroe Road, Charlotte, NC 28205.

35.    Defendant Archroma U.S., Inc. ("Archroma") is a Delaware corporation with its principal offices at 5435 77 Center Dr., #10 Charlotte, NC 28217.

36.    Defendant Arkema Inc. ("Arkema") is a Pennsylvania corporation, with principal offices at 900 1st Avenue, King of Prussia, PA, 19406.

37.     Defendant ChemDesign Products, Inc. ("ChemDesign") is a Delaware corporation, with principal offices at 2 Stanton Street, Marinette, WI 54143.

38.     Defendant AGC Chemicals Americas Inc. ("AGC") is a Delaware corporation, with principal offices at 55 E Uwchlan Ave, Suite 201, Exton, PA 19341.

39.     Defendant Chemicals Inc. a Texas corporation, with principal offices at 12321 Hatcherville Road, Baytown, TX 77521.

40.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation, with principal offices at 196122 E County Road 40, Woodward, OK 73801.

41.     Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation, with principal offices at 2300 Banks Street, Fort Mill, SC 29715.

42.     Upon information and belief, Defendants Chemicals, Inc., Deepwater, and Nation Ford designed, manufactured, marketed, distributed, and sold fluorosurfactant products containing PFAS for use in the manufacture of AFFF products throughout the United States.

43.     Defendant Williams Fire & Hazard Control, Inc. ("Williams") is a Texas corporation, with principal offices at 9605 Richard Wycoff Drive, Port Arthur, TX 77640.

44.     Upon information and belief, Defendant Williams distributed and/or sold AFFF products containing PFAS throughout the United States.

45.     Upon information and belief, Defendants John Does 1-50 also manufactured, distributed, and/or sold products that contain PFAS compounds.  Plaintiff presently lacks information sufficient to specifically identify the names of Defendants sued herein under the fictitious names DOES 1 through 50.  Plaintiff will amend this Complaint to show their true names if and when they are ascertained.

## PER- AND POLYFLUOROALKYL SUBSTANCES

46.    PFAS compounds are a family of synthetic chemicals, also known as perfluorochemicals ("PFCs"), which have been used for decades to make products that resist heat, oil, stains, grease and water.

47.    PFAS chemicals were created in the 1940s and 1950s and were incorporated into certain products due to their surfactant properties.  Over the years, PFAS chemicals have been sold to multiple companies for use in AFFF and a variety of other products, including stain resistant carpeting and upholstery, clothing, paper packaging for food, water and grease resistant cookware.

48.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and other parts of the world.  AFFF is a Class-B firefighting foam, which is water-based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

49.    AFFF is synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants.  When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel.  It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

50.    PFAS are extremely persistent in the environment and resistant to typical environmental degradation processes.  In addition, they are thermally stable synthetic organic contaminants, are likely carcinogenic, and have been shown to correlate with thyroid disease and immune deficiencies.  PFAS also have high water solubility (mobility) and low biodegradation (persistence).

51.    PFAS, in particular PFOA and PFOS, have been identified as "emerging

contaminants" by the United States Environmental Protection Agency ("EPA"). This term describes contaminants about which the scientific community, regulatory agencies and the general public have a new and increasing awareness or understanding about how they move in the environment or affect public health.

52.     PFAS, like other emerging contaminants, have become the focus of active research and study, which means that new information is released periodically regarding the effects on the environment and human health as a result of exposure to the chemicals.

53.     Certain PFAS compounds, such as PFOA (which is also known as "C8" because it contains eight carbon compounds) and PFOS, have been the focus of the Florida Department of Environmental Protection ("FDEP") and EPA investigations.

54.     United States EPA studies have indicated that exposure to PFOA and PFOS over certain levels can result in adverse health effects, including but not limited to developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

55.     In January 2009, EPA established a drinking water Provisional Health Advisory Level ("HAL") for PFOA and PFOS, the two PFAS compounds about which it had the most toxicological data. EPA set the Provisional HAL at 0.4 parts per billion (ppb) for PFOA and 0.2 ppb for PFOS.

56.     In connection with its emerging contaminant studies, EPA implemented an Unregulated Contaminant Monitoring Rule Number 3 in 2012 ("UCMR 3"), which was designed

to collect nationwide information regarding the occurrence of PFAS contamination in the public's water supply.

57.    UCMR 3 required sampling of Public Water Systems ("PWSs") serving more than 10,000 people (i.e., large systems) and 800 representative PWSs serving 10,000 or fewer people (i.e., small systems) for 21 chemicals, including a number of PFASs, during one consecutive twelve month period in the timeframe between 2013 through 2015.

58.    In 2015 Plaintiff participated in the UCMR 3 sampling.

59.    The results of the UCMR 3 sampling revealed the presence of PFAS compounds in Plaintiff's raw water sources.

60.    Sampling under UCMR 3 used higher reporting limits than would be applicable in light of scientific information and guidance levels developed since that time, which are much lower than those employed in 2008 and 2009.

61.    In addition, the UCMR 3 sampling effort did not combine PFAS levels, thus not taking into account added effects from the presence of more than one PFAS compound.

62.    In May 2016, EPA issued new HALs for PFOA and PFOS, identifying 0.07 ppb (or 70 parts per trillion (ppt)) as the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure. EPA acknowledged then, and continues to acknowledge, that the studies associated with PFAS compounds are ongoing, and as such, the HALs may be adjusted based upon new information.

63.    In EPA's February 2020 PFAS Action Plan:  Program Update, the agency included information on a newly approved laboratory method – Drinking Water Method 533 – for testing and detecting PFAS in drinking water.  This new method allows for more effective measurement of PFAS in drinking water.

64.    In October 2021, EPA released its PFAS Strategic Roadmap, outlining the agency's proposed actions related to PFAS contamination, with a focus on researching PFAS exposures, effects, and interventions, preventing further PFAS contamination, and cleaning up existing PFAS contamination.

65.    On December 27, 2021, EPA published the final fifth Unregulated Contaminant Monitoring Rule, which will require sample collection for 29 PFAS between 2023 and 2025.

66.    On June 15, 2022, EPA issued updated HALs for four PFAS compounds, including final HALs for GenX and PFBS at 10 ppt and 2,000 ppt, respectively, and interim HALs for PFOA and PFOS at 0.004 ppt and 0.02 ppt, respectively.

67.    On August 26, 2022, EPA issued a proposal to designate PFOA and PFOS, including their salts and structural isomers, as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCA").  The public comment period for the proposal closed on November 7, 2022, and EPA is in the process of reviewing comments.

68.    FDEP is also working to determine the extent of PFAS contamination within the state and participating in related discussions with federal, state and local partner agencies.

69.    Additionally, legislation was recently enacted by the Florida Legislature to address PFAS contamination within the state.

70.    While more studies have been conducted, and thus, more is known regarding PFOA and PFOS, all PFAS compounds have generally demonstrated similar characteristics to PFOA and PFOS.

71.    Although some PFAS compounds have been shown to break down, the resulting products typically end at non-biodegradable PFOA and PFOS.

72.    As manufacturers, sellers, handlers and dischargers of PFAS compounds, and products containing PFAS, Defendants knew or should have known that the inclusion of PFAS chemicals in any products presented an unreasonable risk to human health and the environment.

73.    Defendants knew or should have known that PFAS compounds are highly soluble in water, highly mobile, extremely persistent, and highly likely to contaminate water supplies if released to the environment.

74.    Defendants' prior knowledge of the adverse impacts from PFAS compounds to human health and the environment amounts to reckless disregard to human health and environmental safety.    Nonetheless, Defendants negligently and recklessly manufactured, distributed, and/or sold PFAS and products containing PFAS with no warnings or instructions on use or disposal to avoid contamination.

75.    Defendants' actions have directly resulted in contamination of raw water sources that make up Plaintiff's water supply system.  Because Defendants' PFAS has infiltrated the waters that serve as the source for Plaintiff's public water supply system, contamination of Plaintiff's water supply is recurring and continuing.

## PLAINTIFF'S WATER SYSTEM IMPROVEMENTS

76.    Plaintiff is committed to the supply of potable drinking water consistent with federal and state guidelines and requirements.  Plaintiff must therefore implement remedies to assure that the water it supplies to its customers meets these standards.

77.    As a direct result of Defendants' actions, Plaintiff has had to address PFAS contamination.  In doing so, Plaintiff has conducted and continues to conduct sampling, studies and investigations related to PFAS, which requires funding by Plaintiff, including costs for its

personnel to supervise the assessments, and costs to develop PFAS treatment scenarios, and costs to analyze available alternatives.

78.     Plaintiff will continue to incur significant costs, for ongoing monitoring and any capital improvements that may be deemed necessary to reduce and/or remove PFAS contamination to assure sufficient non-PFAS impacted water supplies.  Operation and maintenance measures for any such improvements will be required and will add further to the costs Plaintiff has incurred and will incur to address Defendants' PFAS contamination.

**CAUSES OF ACTION**

**COUNT I– NEGLIGENCE**
**AGAINST ALL DEFENDANTS**

79.     Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

80.     This cause of action is brought pursuant to Florida law.

81.     Defendants failed to employ reasonable care which a reasonably prudent person should use under the circumstances by transporting, manufacturing, using, utilizing, storing, handling, and/or disposing of toxic substances, specifically PFAS, in a way permitting its release into the soil, groundwater, surface water and resulting in contamination of the Plaintiff's raw water sources.

82.     The contamination of the water was a foreseeable consequence of Defendants' actions.

83.     Defendants owed Plaintiff a cognizable duty to exercise reasonable care in transporting, testing, manufacturing, using, utilizing, storing, handling, environmental release, and/or disposing of toxic substances, specifically PFAS.

84.     Upon learning of the release of toxic substances, including but not limited to PFAS, Defendants owed Plaintiff a duty to act reasonably to remediate, contain, and eliminate the release before it reached and contaminated Plaintiff's water supply, as well as warn buyers, consumers, and residents of the toxicity of the PFAS.

85.     Defendants breached that duty by failing to act reasonably in the transporting, testing, manufacturing, using, utilizing, storing, handling, and/or disposing of toxic substances, specifically PFAS, and failing to warn anyone of the toxicity and dangers.

86.     Defendants failed to take reasonable, adequate, and sufficient steps or action to eliminate, correct, or remedy a release of PFAS after it occurred, as well as failing to warn anyone of the toxicity and dangers of PFAS.

87.     Defendants negligently breached their duties to Plaintiff to ensure that their transporting, testing, manufacturing, using, utilizing, storing, handling, and/or disposing of PFAS was carried out in a safe and sufficiently secure manner as to prevent the release of PFAS into the environment surrounding their facilities.

88.     Defendants' breach of their duties was the direct, sole, and/or proximate cause of Plaintiff's damages as alleged herein and imminent, substantial, and impending harm to Plaintiff.

89.     Defendants' negligence was grossly negligent, willful, wanton, and/or in reckless disregard of the Plaintiff's rights, such that punitive damages should be awarded.

90.     Plaintiff seeks compensatory damages and punitive damages in a sum determined by a jury, as well as costs and damages for remediation and abatement of the PFAS chemicals.

## COUNT II – STRICT LIABILITY
## AGAINST ALL DEFENDANTS

91.     Plaintiff hereby repeats, realleges, and reiterates every allegation in the preceding paragraphs as if fully restated herein.

92.     This cause of action is brought pursuant to Florida law.

93.     Defendants' manufacturing, use, operational, and disposal practices as it related to material and AFFF/Component Products contaminated with PFAS and/or other ultrahazardous toxins was negligent, reckless, and/or intentional and constituted an ultrahazardous or abnormally dangerous activity for which Defendants are strictly liable.

94.     The Defendants' manufacture, use, mishandling, and disposal of material and products that contained PFAS was inappropriate, given PFAS's toxicity and danger to human health and the proximity of the Plaintiff's sources of raw water.

95.     As a result, Defendants allowed or caused these ultrahazardous and abnormally dangerous substances to leach into the water supply relied on by Plaintiff.

96.     Further, Defendants' contamination of the water supply with PFAS created the likelihood for personal injury and property damage to individuals who use and rely upon the water.

97.     Defendants' manufacture, use, mishandling, and disposal of PFAS and their reckless disregard for the consequences of their actions caused the existence of a high degree of harm to both the Plaintiff and its property. Given the nature of PFAS, the likelihood of harm was great.

98.     The risk of such activities outweighs any value associated with the same.

99.     Defendants are strictly liable in tort for personal injury and property damage sustained by the Plaintiff.

100.    Accordingly, Plaintiff seeks general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate the Plaintiff for those injuries and losses and to restore Plaintiff to its original position, as well as costs and damages for remediation and abatement of the PFAS chemicals.

## COUNT III – STRICT LIABILITY (FAILURE TO WARN)
## AGAINST ALL DEFENDANTS

101.    Plaintiff hereby repeats, realleges, and reiterates every allegation in the preceding paragraphs as if fully restated herein.

102.    This cause of action is brought pursuant to Florida law.

103.    Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals, products, and by-products containing PFAS, which Defendants knew or should have known, would result in contamination of the environment, including the waters that serve as the water source for Plaintiff's water supply, which it provides to its customers, thereby causing damage to Plaintiff.

104.    Defendants knew or should have known of the adverse impacts the exposure to its PFAS compounds, chemicals, products, and by-products would have on the environment and the activities and rights of the Plaintiff and others.

105.    Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, the bioaccumulation of PFAS in humans, animals, and aquatic life, and the foreseeable risk that their PFAS and PFAS-containing products would be discharged, released, or disposed of in the environment.

106.    Use of Defendants' AFFF products in the exact manner in which they were designed to be used without adequate safety measures poses a substantial likelihood of resulting in PFAS contamination in the areas in which they were used, proximately resulting in the PFAS contamination.

107.    Use of Defendants' AFFF products in the exact manner in which they were designed did in fact result in PFAS contamination in the areas in which they were used, proximately resulting in the PFAS contamination.

18

108.    Defendants knew or should have known that the use of their AFFF products in the exact manner in which they were designed to be used, would result in PFAS contamination in the areas in which they were used, proximately resulting in the PFAS contamination.

109.    Knowing of the dangerous and hazardous properties of their products, Defendants had a duty to warn of the hazards associated with their projects contaminating the environment, including drinking water.

110.    Defendants' AFFF products containing PFAS should not have been manufactured in the particular design they were, but having been manufactured, adequate instructions and warnings should have been provided with the products.

111.    Defendants failed to provide warnings or instructions sufficient to notify the users and/or the public and/or the Plaintiff of the dangers inherent in Defendants' products and by-products.

112.    Defendants' failure to provide proper and adequate notice or instruction regarding the dangers of their products and by-products to human health and the environment rendered Defendants' PFAS-containing products and PFAS by-products unreasonably dangerous for the purposes intended and promoted by Defendants.

113.    This failure to warn or adequately instruct regarding the dangers associated with use of Defendants' products directly and proximately caused harm and damages to Plaintiff.

114.    Had Defendants provided adequate warnings, measures could have been taken to avoid or decrease exposure to PFAS.

115.    Had Defendants provided adequate warnings, the users of AFFF in the areas surrounding Plaintiff's water supply sources could have taken steps to reduce or prevent the release of PFAS into the environment.

116.    Adequate warnings should have included, but are not limited to:

    a.  a warning not to allow the AFFF to enter soils, sediment, groundwater, or waterways;

    b.  a warning to immediately collect AFFF upon use; and

    c.  a warning that, because AFFF contained constituents such as PFAS, which pose risks to human health and the environment, use of AFFF containing PFAS requires immediate containment, remediation and removal after use.

117.    Defendants' failure to provide adequate and sufficient warnings for the AFFF products they manufactured, marketed, and sold rendered the AFFF a defective product.

118.    Because, or to the extent, the AFFF products were used exactly as designed, the harm resulting from their use was reasonably foreseeable, and thus proximately caused by Defendants' actions or inaction.

119.    As a direct and proximate result of Defendants' defective design of the AFFF products, the water supply of the Plaintiff and surrounding soil, groundwater and surface water is contaminated by PFAS, proximately resulting in damages to the Plaintiff.

### COUNT IV – PRODUCT LIABILITY (DESIGN DEFECT) AGAINST ALL DEFENDANTS

120.    Plaintiff hereby repeats, realleges, and reiterates every allegation in the preceding paragraphs as if fully restated herein.

121.    This cause of action is brought pursuant to Florida law.

122.    Defendants' manufacturing, use, operational, and disposal practices as it related to material and AFFF/Component Products contaminated with PFAS and/or other toxins led to products that were in a defective condition, which were unreasonably dangerous to buyers, end users, and properties.

123.    Defendants herein, at all times relevant, were in the business of the design,

manufacture, sale and distribution of PFAS-containing products, chemicals, and compounds, and/or the foregoing use of which created PFAS in the environment as part of the foreseeable use of AFFF products.

124.    When Defendants placed their PFAS-containing AFFF products into the stream of commerce, the products were defective, unreasonably dangerous, and not fit, suitable, or safe for the intended, foreseeable, and ordinary uses.

125.    The products designed, manufactured, sold, and distributed by Defendants reached consumers and users without substantial change to the condition and nature of the products. The Defendants made their AFFF products pursuant to their own formulas, research, design specifications, and testing.

126.    Defendants, with knowledge of the risks associated with the use of PFAS compounds, failed to use reasonable care in the design of PFASs.

127.    The defects in Defendants' products existed at the time the product left Defendants' control and were known to Defendants.

128.    Reasonable safer alternatives exist and were available to Defendants at all relevant times.  In fact, many of the Defendants patented feasible alternative products. Thus, the risks of Defendants' products outweighed the benefits.

129.    The defects in Defendants' products proximately caused and have directly resulted in the damages of which Plaintiff complains.

130.    Plaintiff seeks compensatory damages and punitive damages in a sum determined by a jury, as well as costs and damages for remediation and abatement of the PFAS chemicals.

## COUNT V – TRESPASS
## AGAINST ALL DEFENDANTS

131.    Plaintiff hereby repeats, realleges, and reiterates every allegation in the preceding

paragraphs as if fully restated herein.

132.    This cause of action is brought pursuant to Florida law.

133.    Defendants, their agents, and their employees knew, or should have known, that their PFAS chemicals are extremely hazardous to raw water and other rights of the Plaintiff.

134.    Defendants so negligently, recklessly, and/or intentionally failed to properly control, apply, use, and/or dispose of PFAS contaminants, such that they proximately caused and continue to cause said contaminants to contaminate Plaintiff's groundwater and resources.

135.    The contamination has varied over time and has not yet ceased. PFAS continue to migrate into and enter into Plaintiff's raw water supply. The contamination is reasonably abatable.

136.    Plaintiff has not consented to, and does not consent to, this contamination.

137.    Defendants knew, or should have known, that the Plaintiff would not consent to this trespass onto the land and water it has rights to under its longstanding treaty.

138.    At the time the above-described, affirmative, voluntary, and intentional acts were performed with the willful intent to cause PFAS be disbursed onto lands and into the lakes.

139.    Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused a large quantity of PFAS to be released into the water and aquatic life for the Plaintiff.

140.    Defendants' willful, wanton, and intentional failure to act and/or their affirmative choices of actions and following courses of actions have caused PFAS to enter and trespass upon the land the Plaintiff has rights to and cause injury to those rights.

141.    Additionally, and/or alternatively, Defendants' decisions to delay and the resulting delay in taking any affirmative action to eliminate, correct, and/or remedy the PFAS exposure and contamination after having knowledge and notice of said contamination were done with actual

malice, and in wanton, willful, and/or reckless disregard for the rights, health, and property of the Plaintiff.

142.    Accordingly, the Plaintiff seeks general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate it for the injuries and losses and to restore Plaintiff to its original position, including but not limited to the repair and restoration of the property and such has not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential and nominal damages flowing from the trespass which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial, as well as costs and damages for remediation and abatement of the PFAS chemicals.

## COUNT VI – NUISANCE
## AGAINST ALL DEFENDANTS

143.    Plaintiff hereby repeats, realleges, and reiterates every allegation in the preceding paragraphs as if fully restated herein.

144.    This cause of action is brought pursuant to Florida law.

145.    Defendants' reckless, intentional, and unreasonable, abnormally dangerous, and/or negligent acts and omissions, as alleged above, resulted in the discharge of PFAS in the environment, contaminating Plaintiff's raw water.

146.    The discharge of PFAS in the environment resulted in the contamination of Plaintiff's raw water with detectable and/or hazardous levels of PFAS.

147.    By reason of the foregoing, Defendants are liable to the Plaintiff for the damages it has suffered because of Defendants' actions, the amount of which will be determined at trial.

148.    Accordingly, Plaintiff seeks damages from Defendants directly resulting from its injuries in a sufficient amount to compensate for injuries and loss and to restore Plaintiff to its

original position, the cost of repair or restoration, the value of the use of the continuous trespass, and direct, consequential, and nominal damages resulting from the nuisance and trespass which are the natural and proximate result of Defendants' conduct, as well as costs and damages for remediation and abatement of the PFAS chemicals.

## PUNITIVE DAMAGES
## AS TO ALL DEFENDANTS

149.    Plaintiff hereby repeats, realleges, and reiterates each allegation in the preceding paragraphs as if fully restated herein.

150.    Upon information and belief, Defendants engaged in willful, wanton, malicious, and/or reckless conduct that caused the foregoing injuries, property damage, nuisances, and trespasses upon the persons and properties of Plaintiff, disregarding its protected rights.

151.    Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measure to ensure PFAS containing materials would be effectively disposed of and not discharged into the surrounding environment and groundwater supplies.

152.    Defendants have caused great harm to the property and natural resources of the Plaintiff and demonstrated an outrageous conscious disregard for the Plaintiff with implied malice, warranting the imposition of punitive damages.

153.    Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice, in conscious disregard of the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the Plaintiff. Therefore, Plaintiff requests an award of punitive damages in an amount enough to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

154.    Defendants are strictly, jointly, and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other reliefs set forth below.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, City of West Palm Beach, Florida, as to each and every count herein, demands judgment against Defendants, and each of them, individually, jointly, and severally, and request the following relief:

a.    A jury trial and finding or declaration that Defendants engaged in tortious conduct, including negligence, strict liability, trespass, nuisance, fraudulent transfer, and/or willful, wanton, and careless disregard for the Plaintiff;

b.    An award to Plaintiff for all economic and non-economic damages, including general, compensatory, consequential, and incidental damages;

c.    An order for an award of attorney fees and costs, as provided by law;

d.    An award of pre-judgment and post-judgment interest as provided by law;

e.    Equitable or injunctive relief;

f.    Compensatory damages according to proof including, but not limited to:

    i.    Costs associated with the remediation or abatement of PFAS chemicals in sources of raw water;

    ii.    Costs associated with treating raw water contaminated with PFAS;

    iii.    Costs associated with any soil remediation of PFAS;

    iv.    Diminution of property value caused by PFAS contamination;

g.    An award of punitive damages in an amount sufficient to punish Defendants and to deter Defendants from engaging in similar wrongful conduct in the future; and

h.    An order for all such other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues in the matter.


Dated, this the 19th day of September, 2023,

           Respectfully submitted,

           Attorneys for the Plaintiff

      By:
           /s/ Christiaan A. Marcum
           Christiaan A. Marcum (Federal I.D. No. 7556)
           ROGERS, PATRICK,
           WESTBROOK, & BRICKMAN LLC
           1037 Chuck Dawley Blvd., Bldg. A
           Mount Pleasant, SC 29464
           (843) 727-6642
           cmarcum@rpwb.com

           T. Roe Frazer II
           FRAZER PLC
           30 Burton Hills Boulevard, Suite 450
           Nashville, Tennessee 37215
           (615) 647-0990
           roe@frazer.law

           Agostinho Riberior
           Nicole L. Barber
           VENTURA LAW
           235 Main Street
           Danbury, CT 06810
           (203) 800-8000
           augie@venturalaw.com
           nicole@venturalaw.com